UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| JASON SCHMIT, <br><br> Plaintiff, <br><br> vs. <br><br> TRIMAC TRANSPORTATION INC. <br><br> Defendant. | 5:23-CV-5014 <br><br><br> ORDER |

Jason Schmit ("plaintiff"), a resident of Rapid City, South Dakota, at the time of the alleged harm, filed suit against his employer—Trimac Transportation Inc. Pursuant to the Americans with Disabilities Act ("ADA") of 1990, and the laws of South Dakota, plaintiff alleges that defendant: (1) engaged in disability discrimination; (2) created a hostile work environment; (3) retaliated against plaintiff; and (4) engaged in wrongful termination or constructive discharge or both.

Trimac Transportation Inc. ("defendant") engages in freight carrier services in South Dakota and across North America and has its principal place of business in Harris, Texas. The matter is before the Court on defendant's motion for summary judgment.

**I.    BACKGROUND**

Plaintiff was a truck driver at defendant's Rapid City terminal from May 8, 2017, until August 2021. Defendant's truck drivers are responsible for performing and recording pre-trip equipment inspections, obeying traffic laws, performing tire checks at a safe location every 100 miles, or every two hours, and completing and recording post-trip inspections. Defendant's manual provides the rules of conduct for truck drivers and laws and regulations covering the transportation industry, with which all employees are required to comply.

In December 2019, plaintiff was diagnosed with Parkinson's Disease. Plaintiff informed defendant of the diagnosis and discussed the circumstances and his limitations with the defendant. At the time, the only limitation discussed was climbing up and down ladders on the trailers. Defendant informally accommodated plaintiff by permitting plaintiff to haul only rock and coal because that did not require plaintiff to climb up and down a ladder. This accommodation was not documented at the time.

In 2019 or 2020, defendant provided plaintiff with additional accommodations in response to a request, in the form of: "(1) hauling exclusively rock and coal (because those runs do not require the driver to get in and out of the truck as often as hauling other goods); (2) no climbing on ladders; (3) no pulling hoses; (4) working a five-day work-week (unless he is not feeling well enough, in which case he could call in sick), and ending each day by 1:00 p.m.; and (5) National Tank Services (maintenance shop) would wash out plaintiff's trailers after each shift (because it requires climbing a ladder) and connect the trailers to his tractor, if needed after service." Plaintiff alleges that these accommodations continued in 2019, 2020, and early 2021 without issue.

Plaintiff, however, claims he started experiencing issues with his accommodations in March 2021, shortly after a person named Williams became the new terminal manager in February. On March 16, 2021, Shaw—defendant's H.R. partner—asked plaintiff to complete a Request for Reasonable Accommodation form, and for plaintiff's medical provider to provide information about plaintiff's limitations. Plaintiff did not respond, and Shaw followed up on March 30, 2021.

Plaintiff responded on April 20, 2021, and explained that he had contacted a disability rights organization to understand his responsibilities in the interactive process and was "given the go ahead" to respond. Defendant claims that plaintiff's response to Shaw reiterated his existing accommodations, and that plaintiff stated he did not "need any additional accommodations other than what I have already informally received the last two years."

On May 5, 2021, Shaw approved plaintiff's requests and memorialized the accommodations that had previously been provided to plaintiff. Defendant also accommodated plaintiff's request to "haul light" when plaintiff was not feeling well. An email between Shaw and Williams agreed that these accommodations worked for plaintiff and did not cause an undue hardship for defendant's business.

"Hauling heavy" means the driver hauls two nine-axle trailers filled to the maximum weight—148,000 pounds. South Dakota law allows trucks to haul up to 160,000 pounds on the interstate. Wyoming law, however, requires trucks to have a special "W" permit to haul more than 117,000 pounds and then to only drive on state highways. As a result, "hauling heavy" from Rapid City, South Dakota, to Gillette, Wyoming, involves "a slightly longer trip—about one hour more, round trip—because the driver must exit the interstate at the state line." "Drivers hauling heavy are required to stop at the port of entry every time. Drivers hauling light must only stop at the port about half the time, depending on a random draw system." If plaintiff asked to haul light, plaintiff would be dispatched to use the smaller six-axle trailers that can only carry up to 117,000 pounds. Such requests, however, require communication between the driver and dispatch to ensure customers' needs are met and equipment is used efficiently.

On July 12, 2021, defendant's agent counseled plaintiff for violating traffic laws. On July 21, 2021, while hauling heavy from Rapid City to Gillette, Wyoming, a driver reported to Williams that plaintiff and another driver illegally drove on the interstate. Both drivers admitted to the violation after being confronted by Williams. On July 22, 2021, Williams issued a written warning to both drivers for breaking state law. Williams also issued a notice to all drivers reminding them not to haul overweight loads on the interstate.

On July 26, 2021, plaintiff emailed Shaw, claiming there was "full fledged targeting and harassment going on." Plaintiff requested a call back and Shaw called him the same day. On July 30, 2021, Shaw sent an email responding to the issues plaintiff raised during the call. An email from Shaw to another agent of the defendant also shows an attempt to address plaintiff's perception of being targeted.

On August 5, 2021, Disability Rights South Dakota ("DRSD") sent a letter to Shaw on plaintiff's behalf seeking a new accommodation request related to pre- and post-trip inspections. Shaw explained that the trip inspections by the driver are required by the Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA"). "FMCSA holds the operator of the commercial motor vehicle (the driver) responsible for defects with the equipment that should have been identified and documented in the trip inspection and/or citations related to an improper inspection or equipment issues." As a result, Shaw explained that defendant could not allow another employee to take on the liability of inspecting equipment "he/she is not operating—it is the sole responsibility of the driver operating the equipment."

Shaw further explained that, in addition to being unlawful, the requested accommodation would be an undue hardship because it would require another employee to be present every day at the time plaintiff starts and ends his shift. In response to plaintiff's request to haul light, Shaw explained that the request would create an undue hardship to defendant because it affects revenue, the ability to service customers, and prevents fair and equitable dispatch, which adversely impacts other drivers.

On Monday, August 9, 2021, plaintiff emailed Shaw with the subject line: "Response to email dated Aug 6, 2021." Plaintiff said that he was in the process of securing legal counsel and that he is not requesting additional accommodations, but that he wanted the "original agreement concerning accommodation [to] be honored."

The record shows in a series of emails that Williams initiated plaintiff's discharge based on alleged testimony by another employee on August 7, 2021. The employee is alleged to have claimed that plaintiff angrily stated with expletives that plaintiff quit his job. The record, however, shows that plaintiff was in possession of company equipment at the time that plaintiff was alleged to have quit his job. On August 13, 2021, defendant received an email from plaintiff's attorney claiming wrongful termination.

On August 18, 2021, plaintiff applied for total social security benefits (SSDI) to the Social Security Administration (SSA). In support of his application for benefits, plaintiff stated: "I became unable to work because of my disabling condition on August

4

7, 2021. I am still disabled." On September 1, 2021, plaintiff submitted a disability report stating he stopped working on August 7, 2021 "because of my condition(s)."

On September 13, 2021, plaintiff submitted Form SSA-3373 (10-2020) Function Report – Adult to the SSA. Plaintiff wrote:

> I am unable to climb, only stand for a limited time, difficulty walking, I have muscle stiffness, decreased coordination, and increased tremors throughout the day. The inability to control my right hand, arm, right leg & foot make it impossible to work. I am unable to write for documentation. At times I have hallucinations & delusions due to my medication I take for my Parkinson's disease.

On December 21, 2021, the SSA informed plaintiff he was entitled to monthly disability benefits beginning February 2022. The SSA found that plaintiff became fully disabled under its rules on August 7, 2021.

## II.    LEGAL STANDARD

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Bedford v. Doe, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(c)). The United States Supreme Court has held that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (internal quotations omitted).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The movant bears the burden of showing the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); Id. The movant meets such burden by presenting evidence that there is no dispute of material fact, or by showing that the non-movant failed to present sufficient evidence to support an element in the non-movant's case. Celotex, 477 U.S. at 322-23.

Upon such a showing, the burden shifts to the non-movant to present affirmative evidence beyond the pleadings, which shows that a genuine issue of material fact still exists—the weight of which would support a jury verdict in the non-movant's favor." Anderson, 477 U.S. at 256–57; Nat'l Bank of Com. v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999).

Generally, the appearance of conflicting testimony in the filed affidavits and depositions may render summary judgment "inappropriate as the issues involved will depend on the credibility of witnesses."[1] According to the Eighth Circuit, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, [and] not those of a judge." Combs v. The Cordish Companies, Inc., 862 F.3d 671, 680 (8th Cir. 2017).

Further, in accordance with Rule 56(c), the party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Upon such a showing, the burden shifts to the non-movant to present affirmative evidence, beyond the pleadings, showing that a genuine issue of material fact exists. Anderson, 477 U.S. at 256–57. To meet its burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmovant must be able to "show there is sufficient evidence to support a jury verdict in their favor." Nat'l Bank of Com. v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999). After this exercise, the Court views the facts and draws

---

[1] 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2726.1 (4th ed., June 2024 update).

inferences in the light most favorable to the nonmoving party. Northport Health Servs. of Ark., LLC v. Posey, 930 F.3d 1027, 1030 (8th Cir. 2019). "To show a genuine dispute of material fact, a party must provide more than conjecture and speculation." Zayed v. Associated Bank, N.A., 913 F.3d 709, 720 (8th Cir. 2019).

Discrimination claims—such as this—that also arise under the South Dakota Human Relations Act are analyzed in the same manner as a federal ADA claim. See Alexander v. Avera St. Luke's Hosp., 768 F.3d 756, 765 (8th Cir. 2014). Accordingly, the analysis below equally applies to the federal and state-law discrimination claims.

### III.   DISCUSSION

#### A.   Plaintiff's Disability Discrimination Claim.

Plaintiff claims defendant discriminated against plaintiff based on plaintiff's disability in violation of § 12112 of the ADA, *et seq.*[2]

To establish a *prima facie* case of disability discrimination, a plaintiff must prove he: (1) had a disability within the meaning of the ADA, (2) was qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse employment action because of his disability. Olsen v. Capital Region Med. Center, 713 F.3d 1149, 1153 (8th Cir. 2013).

The parties do not dispute that plaintiff is now disabled. Regarding the second element, defendant contends that plaintiff is not a "qualified individual." Defendant reasons that plaintiff stated to the SSA that plaintiff was unable to work as of August 7, 2021. Defendant argues that the statement plaintiff made to the SSA is inconsistent with plaintiff's ADA claim that plaintiff could perform the essential functions of his job. On their face, the claims do appear to be clearly inconsistent.

In cases with such seeming inconsistency, judicial precedence holds that claims for SSDI benefits and for ADA damages do not inherently conflict and that plaintiff is required to explain any discrepancy in the statements made. Cleveland v. Policy Mgt. Sys. Corp., 526 U.S. 795 (1999). Plaintiff has not sufficiently explained the wholly

---

[2] SDCL § 20-13-10 of the South Dakota Human Relations Act (SDHRA).

7

inconsistent statements. The record sufficiently supports in part the second element—that plaintiff for a few years performed the essential functions of his job with limited accommodations.

Regarding the third element, defendant contends that plaintiff failed to establish an adverse employment action because, "claims for failing to accommodate are distinct from unlawful discrimination claims." The Eighth Circuit held that a failure to accommodate is an adverse employment action, "if the employee in need of assistance actually requested but was denied a reasonable accommodation." Dick v. Dickinson State U., 826 F.3d 1054, 1060 (8th Cir. 2016). The record sufficiently supports the conclusion that plaintiff's request for some accommodation was not unnecessarily denied. As to the "recent" additional accommodations requested, the record is clear that pre and post trip inspections be performed by non-operators were reasonably denied.

This is despite the fact that the defendant made no efforts to obtain waivers from federal officials and we do not know whether any such requests could have been granted. The Court's decision, however, does not turn on whether the defendant should have sought a waiver to by-pass the inspection requirement, but upon whether there is a genuine issue of material fact as to whether plaintiff could possibly have performed the essential functions of his job under any circumstances as they existed on August 7, 2021. There are no such credible issues.

Defendant also contends that plaintiff failed to establish that his disability and accommodation request were causally connected to his termination. In the disability discrimination context, the Eighth Circuit held that a "temporal connection can demonstrate a causal link between an adverse employment action and the employee's disability." E.E.O.C. v. Prod. Fabricators, Inc., 763 F.3d 963, 969 (8th Cir. 2014).

In construing the facts in favor of the non-movant, evidence of plaintiff's August 5, 2021, request for accommodation through the disability rights advocate, and evidence of plaintiff's employment termination on or around August 10, 2021, may satisfy the temporal connection. Plaintiff argues he suffered an adverse employment action because defendant: (1) terminated plaintiff's employment based on plaintiff's disability; and (2)

8

failed to provide plaintiff with new accommodations. There are genuine issues of material facts as to whether plaintiff voluntarily resigned or whether, when plaintiff sought to return to his employment defendant acted unreasonably in not permitting his return. These issues, however, are not determinable.

### 1. Plaintiff's Disability-Based Discharge Claim.

A party may prove intentional discrimination using direct or indirect evidence. Lipp v. Cargill Meat. Sols. Corp., 911 F.3d 537, 543 (8th Cir. 2018). "Direct evidence includes 'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude . . . ." Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 966 (8th Cir. 2006). To survive summary judgment, plaintiff must simply adduce "enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive." Anderson v. KAR Glob., 78 F.4th 1031, 1038 (8th Cir. 2023).

If the plaintiff succeeds at the *prima facie* stage, "[t]he burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action." Wenzel v. Mo.–Am. Water Co., 404 F.3d 1038, 1040 (8th Cir. 2005). The burden then shifts back to the plaintiff "to show that the proffered reason was, in reality, a pretext for discrimination." Id.

Plaintiff argues that defendant desired to end the employment relationship between the parties due to plaintiff's disability and corroborates his argument with a series of emails that relate to plaintiff's discharge. First, email exchanges between plaintiff's disability rights advocate and Shaw on August 5, 2021, and August 6, 2021, show a request for additional accommodations and a subsequent denial of the request.

Second, on August 10, 2021, the email from Williams to H.R., recommending the initiation of plaintiff's discharge, suggests Williams is part of the decision-making process for terminating employees. The record also shows that Williams based his decision on the testimony of an employee who alleged that plaintiff angrily stated with expletives that plaintiff quit his job. Again, these are all genuine issues of material facts but are not determinable.

Third, on August 12, 2021, the email from plaintiff to Shaw shows that plaintiff was asked by defendant to wait at home for however long it took for plaintiff's truck to be serviced. Plaintiff, however, realized that he may have been terminated when he was unable to gain access to his employee portal on defendant's website. Fourth, on August 13, 2021, emails between the defendant's agents show a concerted effort "to avoid a wrongful termination or disability discrimination complaint," after Shaw notified Williams of plaintiff's email inquiring whether plaintiff had been fired.

Based on plaintiff's argument which is corroborated with sufficient evidence, this Court finds that there are genuine issues of material facts as to whether plaintiff has established the third element. Plaintiff has established that a rebuttable presumption of a *prima facie* case of disability discrimination exists based on plaintiff's discharge.

In articulating a legitimate nondiscriminatory reason for the adverse employment action, defendant argues that plaintiff was terminated because: (1) two employees claimed that plaintiff had stated he quit his job; and (2) plaintiff was absent from work on August 9, 2021. These issues are immaterial if there are no genuine issues of material fact as to another issue or non-issue.

Defendant failed to corroborate its claims with sufficient evidence, and it appears that a discriminatory attitude toward the plaintiff and plaintiff's disability was more than likely a motivating factor. As a result, the requirement that plaintiff show that the defendant's explanation is pretext for discrimination is moot. Accordingly, this Court finds that plaintiff has sufficiently proved that a genuine dispute exists that defendant discharged plaintiff because of plaintiff's disability. There are no material facts as to whether plaintiff can show he was qualified to perform the essential functions of his job, with or without reasonable accommodation. Again, this stems from plaintiff's entirely inconsistent claims.

    2.    **Plaintiff's Failure to Accommodate Claim.**

In <u>Burwell</u>, this Court held that a modified burden-shifting analysis is appropriate for reasonable accommodation claims—not the McDonnell Douglas burden-shifting

analysis. See Gesinger v. Burwell, 210 F. Supp. 3d 1177, 1193 (D.S.D. 2016); Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004).[3]

To prevail on a claim for failure to accommodate a disability, plaintiff must establish: (1) a *prima facie* case of discrimination based on disability; and (2) defendant's failure to provide accommodation. Powley v. Rail Crew Xpress, LLC, 25 F.4th 610, 612 (8th Cir. 2022); Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 905 (8th Cir. 2015). In considering whether an employee was accommodated, a Court will determine whether the employer engaged in an interactive process. Peyton v. Fred's Stores of Ark., Inc., 561 F.3d 900, 903 (8th Cir. 2009).

"To show that an employer failed to participate in this interactive process, the employee must demonstrate that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 951 (8th Cir. 1999). Upon such a showing by plaintiff, the burden shifts to the defendant to "show special circumstances that demonstrate undue hardship in the particular circumstance." Barnett, 535 U.S. at 401–02, 122 S.Ct. 1516.

First, the uncontroverted record shows that defendant knew of plaintiff's disability. Second, an email record on June 16, 2021, from plaintiff to Shaw, corroborates plaintiff's claim that plaintiff "tried to discuss his accommodations with Williams," and as a result has established the second element. Third, plaintiff argues that there is a genuine dispute of fact because defendant did not make a good faith effort to assist plaintiff in seeking accommodations. Plaintiff, however, failed to corroborate his argument with sufficient evidence. Fourth, plaintiff claims that defendant had accommodated plaintiff for several years and that those accommodations "halted" upon

---

[3] Explaining that "a claim against an employer for failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive." Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004).

the arrival of Williams. Plaintiff, however, failed again to corroborate his claim with evidence. In sum, plaintiff has not established and could not establish that defendant failed to engage in the interactive process.

This Court, however, assumes in *arguendo* that plaintiff has established that defendant failed to engage in the interactive process, and discusses defendant's claim of undue hardship. Defendant argues that it provided plaintiff with reasonable accommodations until plaintiff's most recent request, which would have imposed undue hardships on defendant's business operations and violated federal regulations.

In Barnett, the United States Supreme Court held that, a plaintiff must show that a requested accommodation is reasonable on its face if plaintiff is to survive summary judgment. U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002). The Eighth Circuit on the other hand established that, "[a] reasonable accommodation imposes no undue burden on the employer." Peebles v. Potter, 354 F.3d 761, 767 (8th Cir. 2004); See also Gardea v. JBS USA, LLC, 915 F.3d 537, 541 (8th Cir. 2019). Defendant's evidence that plaintiff's accommodation request would burden defendant's business operations and violate federal regulations further indicates that there is no dispute of material fact that plaintiff's request was unreasonable. As a result, this Court finds that defendant is entitled to summary judgment on the claim that defendant failed to provide reasonable accommodation.

### B.     Plaintiff's Hostile Work Environment Claim.

A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Eliserio v. United Steelworkers of America Loc. 310, 398 F.3d 1076 (8th Cir. 2005).

In order to establish a hostile work environment claim, a plaintiff must prove: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment based on his membership in the protected group; (3) the harassment affected a term, condition, or privilege of his employment; (4) his employer knew or should have known of the

harassment; and (5) the employer failed to take proper action. Rickard v. Swedish Match North America, Inc., 773 F.3d 181, 184-85 (8th Cir. 2014) (citing Peterson v. Scott County, 406 F.3d 515, 523–24 (8th Cir. 2005).

First, the parties do not dispute the first element, and the record shows that plaintiff belongs to a protected group. Regarding the second and third elements, plaintiff contends that, among other things, Williams harassed plaintiff, "abruptly ended the informal accommodation," "added new duties to [plaintiff's job]" and made "disparaging comments." Plaintiff, however, failed to corroborate his allegations with evidence and again repeated the practice of making unsubstantiated claims regarding the third element. The fourth and fifth elements are moot because Williams was plaintiff's supervisor. See Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 566 n.5 (8th Cir. 2000). Consequently, this Court finds that plaintiff has failed to establish and could not establish his hostile work environment claim and there are no genuine issues of material fact as to such matters.

### C. Plaintiff's Retaliation Claim.

In general, a *prima facie* case of retaliation requires plaintiff to show that plaintiff: (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) that there is a causal connection between the adverse action and the protected activity. Oehmke v. Medtronic, Inc., 844 F.3d 748, 758 (8th Cir. 2016); Hill v. Walker, 737 F.3d 1209, 1218 (8th Cir. 2013).

First, the record shows that plaintiff engaged in the protected activity of requesting accommodations when plaintiff attempted to address his accommodations with Williams, and when plaintiff filed for accommodations through a disability rights advocate. However, plaintiff's retaliation claim departs from the general norm because this Court has concluded that plaintiff's request for accommodation was unreasonable.

This conclusion raises the question of whether an unreasonable accommodation request is a protected activity under the ADA. In Pulaski County, Ark., the Eighth Circuit found that "Scruggs' request for additional time to obtain a new FMLA certification was

13

not a reasonable accommodation, and therefore it was not protected activity [under the ADA]." Scruggs v. Pulaski Cnty., Ark., 817 F.3d 1087, 1094 (8th Cir. 2016); See Kirkeberg v. Can. Pac. Ry., 619 F.3d 898, 907–08 (8th Cir.2010). Accordingly, this Court finds that plaintiff's unreasonable request for accommodations is not a statutorily protected activity and precludes plaintiff's retaliation claim. Thus, this Court finds that plaintiff cannot establish a retaliation claim under the ADA.

### D.  Plaintiff's Constructive Discharge Claim.

"To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit." Gesinger v. Burwell, 210 F. Supp. 3d 1177, 1192 (D.S.D. 2016) (quoting Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996).

Plaintiff pleads a constructive discharge claim in case this Court should find that he voluntarily left his job. Plaintiff alleges that the following incidents constitute intolerable working conditions:

> (1) Williams telling Plaintiff that human resources would be contacting him; (2) Williams "changing" Plaintiff's job duties; (3) Williams reversing company decisions on accommodations; (4) Williams contacting Plaintiff after hours and monitoring his position; (5) Williams failing to work with Plaintiff concerning his prior accommodations; and (6) Williams telling Plaintiff he was going to "get rid of him."

Plaintiff, however, failed to support the alleged incidents with sufficient evidence. The alleged incidents do not rise to the level of intolerable working conditions intended to force a similarly situated employee to quit. This is evident in plaintiff's own argument that he did not quit his job. Therefore, this Court finds that plaintiff has not and could not prove that he was constructively discharged by the defendant. Whether he was or was not is not determinative.

### E.  Summary.

I am not lacking in understanding of the severe health problems being suffered by plaintiff. He has a disease with no known cure and one that becomes too rapidly progressive. It has to be coupled with great frustrations and daily suffering. This Court,

however, must proceed not based on sympathy but on the law. A court should not condone or allow any litigant to take completely opposite positions in seeking compensation from two entirely different sources. At least, not in this court will that be permitted. His claims of total disability were made under penalty of perjury. That is not true as to his new allegations as to ability to work. No court should endorse possible perjury or untrue statements. There are no genuine issues as to any material facts dealing with these inconsistent positions, thus mandating a grant of summary judgment.

## ORDER

Based upon the foregoing, it is HEREBY ORDERED:

1. Defendant' motion for summary judgment, Doc. 47, with respect to plaintiff's disability discrimination claim based on discharge is moot;
2. Defendant's motion for summary judgment, Doc 47, with respect to plaintiff's discrimination claim based on failure to accommodate is granted;
3. Defendant's motion for summary judgment, Doc 47, with respect to plaintiff's hostile work environment claim is granted;
4. Defendant's motion for summary judgment, Doc 47, with respect to plaintiff's retaliation claim is granted; and
5. Defendant's motion for summary judgment, Doc 47, with respect to plaintiff's constructive discharge claim is moot.
6. There are not genuine issues of material fact and this case should be dismissed without the taxation of costs.

DATED this 23rd day of January, 2025.

BY THE COURT:

*[signature]*

CHARLES B. KORNMANN
United States District Judge